IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAMOUND WILSON,**<br><br>           **Plaintiff,**<br><br>v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>           **Defendant.** | Case No.  13-cv-2439-DDC |

**MEMORANDUM AND ORDER**

Pursuant to 42 U.S.C. § 405(g), plaintiff Lamound Wilson seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for benefits under Title II and Title XVI of the Social Security Act, as amended. Plaintiff has filed a brief asking the Court to reverse or remand the Commissioner's decision. (Doc. 16) Plaintiff also filed a separate Motion to Remand (Doc. 19) because the Commissioner awarded him benefits for a later disability period. The Commissioner has filed a response brief (Doc. 22) addressing the arguments plaintiff raised in his initial brief and in his Motion to Remand. This matter ripened for decision when plaintiff did not file a reply to the Commissioner's response brief within the 14-day time limit provided by D. Kan. Rule 6.1(d). Having reviewed the administrative record and the parties' briefs, the Court affirms the Commissioner's decision denying plaintiff benefits.

**I.     Factual Background and Procedural History**

In May 2010, plaintiff applied for disability insurance benefits ("SSD") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 18 U.S.C. §§

401-434, 1381-1385. (R. 12) The Commissioner denied plaintiff's claims initially and denied them again upon reconsideration. (*Id.*) On July 27, 2012, following a hearing, the Administrative Law Judge ("ALJ") concluded that plaintiff was not disabled as the term is defined in the Social Security Act. (R. 12-21) On August 14, 2013, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (R. 2-4) Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner, subject to judicial review under 42 U.S.C. § 405(g).

Plaintiff was born in January 1959 and alleges that his period of disability began on January 1, 2008. (R. 144, 48) In his Disability Report, plaintiff asserts that he is disabled because of "arthritis, depression, [a] bad knee," and a "bad hip." (R. 184)

Plaintiff is a veteran and has received most of his medical care from doctors at VA Medical Centers. (R. 243-301, 335-530) During past visits to doctors, he complained that he struggled with left knee and ankle pain. (R. 390) He also complained of neck pain, lower-back pain, and pain in his hands. (*Id.*) Plaintiff believes that his work history, which includes work at a meat packing plant, has exacerbated his physical ailments. (R. 387) His physical problems have worsened in recent years. (*Id.*) Treating physicians' records reflect that plaintiff has a history of lower-back and knee pain, spondylosis, degenerative changes, disc herniation in the cervical and lumbar spine, and difficulties with his upper extremities. (R. 514) In 2011, doctors diagnosed him with right cubital tunnel syndrome of the ulnar nerve and carpal-metacarpal anthropathy in his right hand. (R. 334) Doctors also noted right thumb problems, and x-rays showed some degenerative joint disease of the right thumb and a right shoulder impingement. (R. 343-44)

After reporting that his hand problems had worsened, plaintiff underwent surgery in June 2011 to repair the cubital tunnel entrapment doctors had diagnosed previously. (R. 480) Plaintiff tolerated the procedure well and doctors expected his hand condition to improve. The ALJ concluded that plaintiff's physical deficits, though they had taken some toll on his ability to work, did not preclude all gainful work. (R. 16) On appeal, plaintiff has not challenged the ALJ's conclusions about his physical impairments.

In addition to physical impairments, plaintiff also alleges mental impairments, which the ALJ found to be the "core of this case." (R. 16) Plaintiff concedes much of his mental impairments exist because he abuses several substances, including alcohol, cannabis, and cocaine. (R. 326) Plaintiff reports that he drinks 1-1.5 pints of alcohol daily and has consumed alcohol at the same or greater levels for the last 25 years. (*Id.*) He also reports using marijuana once or twice a week, and smoking and snorting crack cocaine. (*Id.*) Plaintiff last received substance abuse treatment in 1989 and has had little success overcoming his substance abuse problems. (R. 326)

Although plaintiff recognizes that many of his mental health issues are attributable drug and alcohol abuse ("DAA"), he asserts that he suffers from disabling mental health problems independent of DAA. Specifically, plaintiff alleges that he suffers from work preclusive depression and cognitive deficits. (R. 16) The ALJ concluded that plaintiff, accounting for both plaintiff's DAA and non-DAA related mental impairments, had a work preclusive disability. (R. 18-19)

About one year after the ALJ issued the July 27, 2012 decision denying plaintiff benefits, plaintiff filed a new application alleging a disability onset of September 23, 2013. The Commissioner agreed. (Doc. 19 at 2) Although the Court lacks evidence about the precise basis

for the Commissioner's decision to award benefits, it seems the Commissioner concluded that plaintiff's mental and/or physical impairments prevented him from engaging in substantially gainful employment, and that DAA was not a material factor contributing to his disabling conditions.  (*Id.*)  Following the award of benefits for this post-September 2013 period of disability, plaintiff filed a Motion to Remand (Doc. 19).

Plaintiff's motion argues that the Commissioner's favorable decision is inconsistent with the first decision denying plaintiff benefits because the Commissioner reached a different conclusion while "likely considering" the same evidence.  (*Id.*)  According to plaintiff, this inconsistency satisfies 42 U.S.C. § 405(g)'s "good cause" standard for remanding a case to the Commissioner for reconsideration.

## II.     Legal Standards

### A.     Standard of Review

Plaintiff's request for review and Motion to Remand each invoke the Court's power of judicial review under 42 U.S.C. § 405(g).  Section 405(g) grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the case for a rehearing."  Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Cowan v. Astrue*, 552 F.3d 1182, 1184-85 (10th Cir. 2008) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).  "If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084.  It must be "more than a scintilla," although it need not be a preponderance.  *Id*.  While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Id.* (citation and internal quotation marks omitted).  But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational."  *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012).  When determining whether substantial evidence supports the Commissioner's decision, courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision."  *Id.*  "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

Accordingly, the Court will review the ALJ's decision denying plaintiff benefits to determine whether it is "free from legal error and supported by substantial evidence."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

**B.     Disability Determination**

Claimants seeking Social Security disability benefits carry the burden to show they are disabled.  *Wall*, 561 F.3d at 1062 (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)). As summarized by our Circuit, this familiar five-step process proceeds as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [he or] she possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g). The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that the claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

If a claimant's disability involves drug and alcohol abuse ("DAA"), the ALJ must conduct an additional analysis.  The ALJ must consider first whether the claimant is under a disability considering all of the claimant's impairments, including DAA.  20 C.F.R. §§ 404.1535(a), 416.935(a).  But DAA may not serve as an independent basis for a disability finding.  42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.").  Thus, if the Commissioner concludes the claimant's impairments—including DAA—are disabling, the Commissioner then must determine whether DAA is a "material factor" contributing to the disability, *i.e.*, whether the claimant's impairments would disable him independent of the limitations resulting from DAA.  20 C.F.R. §§ 404.1535(a), 416.935(a); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1215 (10th Cir. 2001).

### III.   Issues for Review

Plaintiff asserts that the ALJ erred in two ways.  First, he argues that no substantial evidence supports the ALJ's conclusion that DAA was a material factor contributing to plaintiff's disability.  Second, he contends the Commissioner's subsequent decision to award him benefits establishes good cause to remand the case to the Commissioner.  The Court considers each argument, in turn, below.[1]

---

[1] In his brief, plaintiff also asserts that:  (1) "the ALJ violated the correct legal standard by ignoring uncontroverted evidence favorable to [plaintiff] in reaching [her] decision" (Doc. 16 at 5); and (2) the ALJ did not include all of plaintiff's exertional and non-exertional impairments in her RFC findings (Doc. 16 at 10).  However, plaintiff does not specify what evidence the ALJ ignored, nor does he otherwise develop these arguments beyond conclusory statements.  The Court will not consider these two arguments because plaintiff has failed to brief them adequately for review.  *Johnson v. Colvin*, No. 13-1422-RDR, 2014 WL 4980437, at *6 (D. Kan. Oct. 6, 2014) (declining to address "plaintiff's undeveloped attack on the decision to deny benefits") (citing *Mays v. Colvin*, 739 F.3d 569, 575-76 (10th

### A. DAA as a Material Factor in the ALJ's RFC Assessment

The ALJ initially found that the severity of plaintiff's mental impairments, accounting for DAA, precluded work. (R. 17)  Nevertheless, the ALJ concluded that plaintiff "was not under a 'disability'" as the Social Security Act defines the term because "if substance abuse was not a condition, [plaintiff] would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. 20)  In other words, the ALJ determined that DAA contributed materially to plaintiff's disability. (*Id.*)  Plaintiff contends that the ALJ did not rely on any medical evidence to reach this conclusion.  Rather, plaintiff asserts, the ALJ relied on her own lay opinion to determine that plaintiff could return to work absent DAA.  According to plaintiff, the medical evidence purportedly relied upon in the ALJ's materiality assessment is ambiguous at best, and the ALJ "concedes" that the examining physician, Dr. Schlosberg, could not distinguish which mental impairments would persist absent DAA. (Doc. 16 at 15)  Thus, the Court must determine whether substantial evidence supports the ALJ's conclusion that DAA was a material factor contributing to plaintiff's disability.

The Commissioner's implementing regulations set forth the analysis an ALJ should conduct in a case involving DAA.  *Salazar v. Barnhart*, 468 F.3d. 615, 623-24 (10th Cir. 2006) (citing 20 C.F.R. § 416.935(a), (b)).  Subsection (b) of § 416.935 describes the process for determining whether DAA is a material factor contributing to a claimant's disability:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

---

Cir. 2014)); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i)  If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935(b).

The Tenth Circuit elaborated in *Salazar v. Barnhart*, focusing on an emergency teletype the Commissioner issued to provide guidance for cases where a claimant has alleged mental impairments in addition to DAA.[2] 468 F.3d. at 623. The Tenth Circuit observed that the teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is *not* a contributing factor material to the disability determination." *Id.* (emphasis in original). The Tenth Circuit noted that the opinion of a medical or psychological consultant can support a materiality finding, but only if the consultant can

---

[2] The Commissioner urges the Court to apply the procedure set forth in Social Security Ruling 13-2p ("SSR 13-2p"), which superseded the instructions in the Commissioner's teletype for deciding DAA materiality. SSR 13-2p, *Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism* (DAA), 78 Fed. Reg. 11939-01 (February 12, 2013). Although SSR 13-2p is generally consistent with Commissioner's emergency teletype, it did not take effect until March 22, 2013. *Id.*; *see also Herrera v. Colvin*, No. 2:13-CV-128 BCW, 2014 WL 806162, at *4 (D. Utah Feb. 28, 2014). The Court will apply only those regulations in effect when the ALJ issued her decision on July 27, 2012. *Newbold v. Colvin*, 718 F.3d 1257, 1261 n.2 (10th Cir. 2013) (applying only those Social Security regulations "'in effect at the time of the ALJ's decision'") (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir.2012)). In this case, the Court applies the Commissioner's emergency teletype, as construed by the Tenth Circuit in *Salazar*.

disentangle the limitations caused by DAA from those caused by a claimant's other mental impairments. *Id.*

Under *Salazar*, the best evidence about DAA materiality is evidence showing the effect of prolonged abstinence on plaintiff's impairments. 468 F.3d. at 623. But where the record contains no evidence about a claimant's mental functioning absent drug and alcohol use, the Tenth Circuit requires a specific medical or psychological "report, opinion, or projection about the claimant's limitations if [he] stopped using drugs or alcohol." *Id.* at 624. Under this rule, the ALJ "must cite medical evidence projecting what limitations would remain if [p]laintiff stopped drug or alcohol abuse." *Smotherman v. Astrue*, No. CIV-11-311-HE, 2012 WL 2256762, at *4 (W.D. Okla. Apr. 30, 2012) (citing *Salazar*, 468 F.3d at 623-624). The Tenth Circuit formulated this requirement from a portion of the teletype that instructs a finding of nonmateriality if a medical or psychological consultant "*cannot* project what limitations would remain if the individuals stopped using drugs/alcohol." *Id.* at 623 (emphasis added). And while the Court recognizes other Circuit courts have questioned the Tenth Circuit's interpretation of this portion of the teletype, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 126 n.3 (2d Cir. 2012) (criticizing the Tenth Circuit's interpretation of the teletype for equating cases lacking predictive expert opinions with cases where evidence does not support a DAA materiality finding generally), our Court must follow the Tenth Circuit's formulation.

The Commissioner acknowledges that "no doctor affirmatively opined that [p]laintiff could work absent [DAA]," but argues that "such evidence is not required in order for an ALJ to find that drug and alcohol abuse is a material factor." (Doc. 22 at 7) But as the Court has explained, the Tenth Circuit's formulation comes close to requiring that a medical expert affirmatively opine that DAA materially contributes to a claimant's disability. *Cage*, 692 F.3d at

10

126 (rejecting plaintiff's reliance on *Salazar* because the Tenth Circuit appears to be the lone circuit to adopt the view that "an ALJ cannot find that drug or alcohol abuse is a contributing factor where there is no medical opinion addressing the issue.").

Significantly, *Salazar*'s rule does not permit the Court to inquire whether substantial evidence supports the ALJ's materiality finding notwithstanding the absence of a medical opinion predicting plaintiff's impairments absent DAA. This aspect of *Salazar*'s holding confines our Court's capacity to uphold an ALJ's materiality finding on appeal. *See, e.g.*, *Simpson v. Astrue*, No. CIV-11-565-M, 2011 WL 7006100, at *3 (W.D. Okla. Dec. 21, 2011) (applying *Salazar* and reversing ALJ's materiality finding because there was no "opinion by any medical source as to [p]laintiff's remaining limitations" absent DAA); *Elliott v. Astrue*, No. 07-CV-01922-LTB, 2008 WL 2783486, at *10 (D. Colo. July 16, 2008) (reversing ALJ's materiality finding where there was no medical opinion addressing "the extent to which [p]laintiff's substance dependence influences her ability to perform work-related mental tasks"); *Upton v. Astrue*, No. CIV-10-538-W, 2011 WL 1212760, at *8 (W.D. Okla. Mar. 2, 2011) (reversing and remanding because AJL's analysis did not comply with *Salazar*).

Moreover, there is some uncertainty whether the Commissioner or the claimant bears burden of proving (or disproving) materiality. *See Caswell v. Colvin*, No. 13-CV-552-JD, 2014 WL 4749456, at *9 (D.N.H. Sept. 24, 2014) ("[The Tenth] Circuit has taken a different route in deciding cases involving alcoholism or substance abuse, making it unclear where that circuit would allocate the burden."); *but see* SSR 13-2p (clarifying that plaintiff "continues to have the burden of proving disability throughout the DAA materiality analysis"). Regardless of where the burden rested before SSR 13-2p, the Circuit has interpreted the teletype to impose an exacting standard for kind of evidence that can support a materiality finding. Nevertheless, the Court

concludes that ALJ reached her decision denying plaintiff benefits from evidence meeting *Salazar*'s heightened standard.

Here, the ALJ was unable to examine the "most useful evidence" of DAA materiality—the effects of periods of abstinence on plaintiff's impairments—because the record presented no periods of abstinence. *Salazar*, 468 F.3d. at 624. Lacking this evidence, the ALJ had to examine, instead, treatment notes and consultative opinions to conclude whether DAA had contributed materially to plaintiff's disability determination. Dr. Schlosberg, who conducted a consultative examination, concluded that it was difficult to disentangle the mental impairments caused by plaintiff's substance abuse and those impairments resulting from other conditions:

> It is difficult to determine the impact of the [emotional] symptoms separate from those of substance abuse. Specific cognitive deficits included mild impairment noted in working memory and concentration. Although possible impairment was indicated on the Shipley-2, it is difficult to determine the impact of substance use on this measure. Additional testing would be helpful following a period of abstinence from all substances. Overall, it is difficult to determine the impact of a mood disturbance or potential cognitive impairment due to the claimant's substance abuse.

(R. 310). Dr. Scholsberg's report also diagnosed plaintiff with polysubstance dependence and ruled out major depressive disorder. (*Id.*) Dr. Wilkinson, who performed a psychiatric review, agreed with Dr. Schlosberg's diagnosis. But Dr. Wilkinson also expressed skepticism about Dr. Scholsberg's conclusion that it was difficult to separate the impairments caused by depression from those caused by DAA.

> Dr. Schlosberg states that it was difficult to assess the overall impact of mood and potential cognitive impairment due to [claimant's] substance abuse. Added that [claimant] could interact appropriately with others. Dr. Scholsberg's concern that psychological factors might be clouded by substance abuse is noted, however the objective findings in his report do not raise the [claimant's] dysphoria to the level of a clinical diagnosis. The MDI of Polysubstance Dependence is given considerable weight. [Claimant] may struggle with depression, but the extent of the effects on functioning are not credible. His self-report of depressive [symptoms] far exceed[] the objective findings and even his own report to medical treatment sources. His report of soiling himself in bed is more consistent

> with MDI of Polysubstance Dependence than any objective evidence in the MER regarding depression. [Claimant] declines referrals and apparently does not intend to address addictive behaviors.

(R. 326) In May 2011, Dr. Snyder reviewed the records and confirmed Dr. Wilkinson's assessment. (R. 329-30) Notably, Dr. Snyder also determined that plaintiff exhibited no strong symptoms of depression and arrived "at a diagnosis of polysubstance dependences and rule[d] out major depression." (R. 329)

The ALJ considered Dr. Shlosberg's opinion that certain aspects of plaintiff's cognitive limitations were difficult to isolate from DAA. (R. 16) However, despite some difficulty sorting out the causes of plaintiff's cognitive impairments, Dr. Schlosberg could rule out major depressive disorder as the cause of plaintiff's mental impairments. (R. 310) While acknowledging Dr. Shlosberg's opinion, the ALJ nevertheless gave "significant weight to the conclusions of Dr. Wilkinson" because Dr. Wilkinson conducted a thorough evaluation, supported her conclusions with clinical findings and medical evidence, and because a second consultant, Dr. Snyder, reviewed and confirmed her conclusions. (R. 17); *see also* 20 C.F.R. § 404.1527(c)(3)-(4) (permitting an ALJ to give greater weight to opinions supported by medical evidence and consistent with the record as a whole).

The Court concludes that the record substantially justifies the ALJ's decision to accredit Dr. Wilkinson and Dr. Snyder's opinions because treating physician notes support their conclusions. The record establishes that plaintiff, for the most part, has neither sought nor received mental health treatment. The lone exception is that doctors at the VA hospital prescribed plaintiff Buproprion, a depression medication, but he discontinued the medication because he did not know why doctors had prescribed it for him. (R. 326). Also, plaintiff did not mention the depression medication in the more recent treatment records (*Id.*) Moreover,

13

treatment notes from the VA hospital indicate that plaintiff did not need psychiatric treatment, but that he did need substance abuse treatment.  (R. 433)

Contrary to plaintiff's assertion, the ALJ did not rely on her own "lay" opinion to conclude that DAA was a material factor contributing to plaintiff's disability.  Rather, the ALJ gave considerable weight to the opinion of a psychiatric consultant for good reason because it is consistent with the medical record.  Additionally, the Court finds that Dr. Wilkinson's opinion satisfies the Tenth Circuit's formulation for substantial evidence in DAA materiality cases.  Dr. Wilkinson, a psychological expert, opined that plaintiff's alleged limitations resulting from depression were not credible because they exceeded objective findings and even his own reports to treating physicians.  (R. 326)  She concluded that plaintiff's depression did not satisfy the level of severity required to meet a listing level condition because "it did not rise to the level of a clinical diagnosis."  (R. 322, 326).  In sum, except for DAA, plaintiff does not have a severe and medically determinable impairment.  Although Dr. Wilkinson's report does not state her conclusion in the affirmative and predictive terms favored by *Salazar*, the substance of her conclusion is the same:  Absent DAA, plaintiff would have not have a severe and medically determinable impairment and, hence, would not qualify as disabled under the Act.  20 C.F.R. § 404.1520 ("If you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled.").

Thus, Dr. Wilkinson's report constitutes a "report . . . [about plaintiff's] remaining limitations" absent DAA and, therefore, may serve as evidence of DAA materiality under *Salazar.  See* 468 F.3d at 624.  And because the ALJ was otherwise justified in giving significant weight to Dr. Wilkinson's opinion, the Court concludes substantial evidence supports the ALJ's

finding that plaintiff would not be disabled but for DAA.  The Court, therefore, affirms the ALJ's materiality finding.

### B. Plaintiff's Subsequent Benefits Award Does Not Warrant Remand

In plaintiff's Motion to Remand (Doc. 19), plaintiff claims that he was awarded disability benefits based on an application filed on September 23, 2013.  Plaintiff asserts that this decision "likely was based" on the same evidence that the ALJ had before her when she denied plaintiff's earlier application and, therefore, conflicts with the ALJ's decision.  Plaintiff thus contends that the Court must remand this case so that the Commissioner can reconcile these "conflicting" decisions.  (*Id.* at 1)

Courts have held that a subsequent benefits award sometimes can suffice as a reason to remand a Social Security appeal for further development of the record.  *Greene v. Astrue*, No. 10-4087-JTM, 2011 WL 2671313, at *4 (D. Kan. July 8, 2011) ("[W]ith an onset day one day after [the previous] denial, the proximity of the Commissioner's subsequent favorable decision is likely to be of a significant and substantial character in relation to the earlier claim, and thus, material.").  However, a "subsequent award of benefits is not independently sufficient to warrant remand of an earlier and denied application for disability benefits."  *Roell v. Colvin*, No. 13-CV-0423-CVE-FHM, 2014 WL 4385848, at *8 (N.D. Okla. Sept. 4, 2014) (citing *Allen v. Astrue*, 561 F.3d 646 (6th Cir.2009)).

In this case, the ALJ found that plaintiff was not disabled between his alleged onset date of January 1, 2008, through the date of the decision on July 27, 2012.  (R. 20)  The Commissioner determined later that plaintiff was disabled beginning on September 23, 2013— more than a year after the ALJ issued her decision denying plaintiff benefits.  The Court's task in this case "is to review the decision of the ALJ as to whether plaintiff was entitled to benefits

15

during a period of time which was prior to the ALJ's decision." *Wait v. Barnhart*, No. 06-4024-RDR, 2007 WL 1150418, at *7 (D. Kan. Jan. 10, 2007) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir.1999)).  Our Court has held that "[a] subsequent award of benefits indicating that plaintiff was entitled to SSI benefits more than a month after the ALJ's decision is not relevant" to the Court's review.  *Wait*, 2007 WL 1150418 at *7.  Here, no overlap between the two alleged disability periods exists, and the subsequent favorable decision did not award benefits for a disability following closely the period for which the ALJ denied benefits.  Consequently, the Court concludes that plaintiff's subsequent award of benefits, standing alone, does not warrant remand.

Moreover, "[i]n the case of a subsequent favorable determination, a sentence six remand is appropriate only if the plaintiff can show new substantive evidence that might have changed the outcome of the prior proceeding."  *Allen*, 561 F.3d at 654 (emphasis added).  In this context, plaintiff must specify the evidence supporting the subsequent award of benefits because "[t]he new determination might be based on a change in the claimant's condition that occurred after the initial determination."  *Id.*  Here, plaintiff has presented no evidence that the Commissioner based the September 2013 award on "the same, or nearly the same, evidence" that was before the ALJ.  *Jackson v. Astrue*, 402 F. App'x 717, 718 (3d Cir. 2010) ("Standing alone, the fact that the Commissioner subsequently found claimant to be disabled does not warrant remand or reversal in the absence of new and material evidence, which claimant here has failed to provide.").  Based on the current argument and evidence before it, the Court cannot even discern the type of disability that supported the Commissioner's award of benefits, let alone what evidence supported that award.  Plaintiff's bare speculation that the subsequent award was "more likely

than not" based on the same evidence that the ALJ considered more than a year earlier is insufficient to carry his burden. Accordingly, the Court denies plaintiff's Motion to Remand.

## IV. Conclusion

Based on this analysis, the Court finds that substantial evidence supports the ALJ's conclusion that DAA was a material factor contributing to plaintiff's disability determination. The Court finds also that plaintiff's subsequent benefit award does not warrant remand in the absence of new and material evidence, and plaintiff has failed to identify any. Accordingly, the Court affirms the ALJ's decision denying plaintiff SSD and SSI benefits and declines to remand this case to the Commissioner.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability benefits is affirmed.

**IT IS FURTHER ORDERED BY THE COURT THAT** Plaintiff's Motion to Remand (Doc. 19) is denied.

**IT IS SO ORDERED.**

**Dated this 30th day of January, 2015, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**